## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| TAMARA KNUUTILA and JOSE GARCIA, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>ADVANCE AMERICA CASH ADVANCE CENTERS, INC., ADVANCE AMERICA CENTERS OF TENNESSEE, INC. d/b/a ADVANCE AMERICA, and ADVANCE AMERICA CENTERS OF CALIFORNIA, LLC d/b/a ADVANCE AMERICA,<br><br>          Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Tamara Knuutila and Jose Garcia ("Plaintiffs") individually and on behalf of all others similarly situated, and by and through their undersigned counsel files this Class Action Complaint against Defendants Advance America Cash Advance Centers, Inc., Advance America Centers of Tennessee, Inc. d/b/a Advance America, and Advance America Centers of California, LLC d/b/a Advance America (collectively, "Defendants" or "Advance America") and allege the following based upon personal knowledge of the facts, and upon information and belief based on the investigation of counsel as to all other matters.

## NATURE OF THE ACTION

1.     Defendants provide financing services, including various loans and cash advance services. To provide these services and in the ordinary course of Advance America's business, Defendants acquires, processes, analyzes, and otherwise utilizes the personally identifiable

information ("PII") of their customers and applicants, including, but not limited to, their names and Social Security numbers.

2.     By taking possession and control of Plaintiffs' and Class members' PII, Defendants assumed a duty to securely store and protect that sensitive information.

3.     Defendants breached this duty and betrayed the trust of their clients, Plaintiffs and Class members by failing to properly safeguard and protect their PII, thus enabling cybercriminals to steal and misuse it.

4.     With this action, Plaintiffs and the Class seek to hold Defendants responsible for the harms they caused them resulting from the massive and preventable disclosure of such sensitive and personal information.

5.     On or about February 7, 2023, cybercriminals foreseeably accessed Defendants' inadequately secured network containing the PII of Plaintiffs and thousands of other Class Members (the "Data Breach"). Through this unauthorized and relatively unfettered access, cybercriminals were able to "access[] or acquire[] certain corporate business records on [Defendants'] network."[1]  Based on a subsequent investigation, Advance America determined through that the PII of thousands of customers was among the records accessed and/or acquired by unauthorized cybercriminals.[2]  Advance America then inexplicably waited until August 2023, more than six months after learning of the intrusion, to begin notifying victims of the Data Breach.

---

[1] https://ago.vermont.gov/sites/ago/files/2023-08/2023-08-15%20Advance%20America%2C%20Cash%20Advance%20Centers%20of%20Vermont%20Data%20Breach%20Notice%20to%20Consumers.pdf.

[2] *Id*.

6.      As a result of Defendants' negligent and wrongful conduct, Plaintiffs' and Class members' valuable PII was left in the hands of cybercriminals.

7.      Defendants' misconduct—failing to implement adequate and reasonable data security measures to protect Plaintiffs' and Class members' PII, failing to timely detect the Data Breach, failing to take adequate steps to prevent and stop the Data Breach, failing to disclose the material facts that they did not have adequate security practices and employee training in place to safeguard the PII, failing to honor their promises and representations to protect Plaintiffs' and Class members' PII, and failing to provide timely and adequate notice of the Data Breach— caused substantial harm and injuries to Plaintiffs and Class members across the United States.

8.      Due to Defendants' negligence and data security failures, cybercriminals had access to, and now potentially possess, everything they need to commit identity theft and wreak havoc on the financial and personal lives of thousands of individuals.

9.      As a result of the Data Breach, Plaintiffs and Class members have already suffered damages. For example, now that Plaintiffs' PII has been released to cybercriminals, Plaintiffs and Class members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiffs and Class members are now forced to deal with the danger of identity thieves possessing and fraudulently using their PII. Plaintiffs and Class members have lost time and money responding to and attempting to mitigate the impact of the Data Breach.

10.      Plaintiffs brings this action individually and on behalf of the Class and seeks actual damages, statutory damages, treble damages, restitution, and injunctive and declaratory relief (including significant improvements to Defendants' data security protocols and employee training

practices), reasonable attorney's fees, costs, and expenses incurred in bringing this action, and all other remedies this Court deems just and proper.

## THE PARTIES

11.     Plaintiffs Knuutila is a citizen and resident of the state of Tennessee. Plaintiff Knuutila received a letter from Advance America Centers of Tennessee, Inc. d/b/a Advance America, notifying her that her PII, including her Social Security number, had been compromised in the Data Breach.

12.     Plaintiffs Garcia is a citizen and resident of the state of California. Plaintiff Garcia received a letter from Advance America Centers of California, LLC d/b/a Advance America, notifying him that his PII, including his Social Security number, had been compromised in the Data Breach.

13.     Defendant Advance America Cash Advance Centers, Inc. is a Delaware corporation with its principal place of business in South Carolina.

14.     Defendant Advance America, Cash Advance Centers of Tennessee, Inc. d/b/a Advance America is a Delaware corporation with its principal place of business in South Carolina. Advance America, Cash Advance Centers of Tennessee, Inc. d/b/a Advance America is a subsidiary of Advance America Cash Advance Centers, Inc.

15.     Defendant Advance America, Cash Advance Centers of California, LLC d/b/a Advance America is a limited liability company formed in Delaware with its principal place of business in South Carolina. Advance America, Cash Advance Centers of California, LLC d/b/a Advance America is a subsidiary of Advance America Cash Advance Centers, Inc.

## JURISDICTION AND VENUE

16.     This Court has diversity jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiffs and members of the Class are citizens of states that differ from Defendants.

17.     This Court has personal jurisdiction over Defendants because Defendants; principal place of business is in this District and Defendants conduct substantial business in South Carolina and this District through their headquarters and offices.

18.     Venue is likewise proper as to Defendants in this District under 28 U.S.C. § 1391 because Defendants is headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

**A.  The Data Breach**

19.     For Advance America to perform their financing services, from which they generate their profits, Defendants collects and stores the PII of individuals, including Plaintiffs and the Class.

20.     Due to the highly sensitive and personal nature of the information Defendants acquires and stores with respect to loan applicants and customers, Defendants recognizes the privacy rights of the individuals whose PII Defendants obtains, as evidenced by Advance

America's publicly available privacy policy ("Privacy Notice").[3]  Defendants' Privacy Notice promises to, among other things, that:

> To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.

21.     Plaintiffs and the Class Members reasonably expected that Defendants would implement and maintain reasonable data security measures to protect their PII from foreseeable threats.

22.     On or around February 7, 2023, Advance America became aware of a data security incident that impacted its network, indicating a likely data breach. Based on a forensic investigation, Advance America confirmed that cybercriminals had infiltrated its systems and were able to access and/or acquired multiple business records, including the highly sensitive PII of thousands of individuals, including Social Security numbers.

23.     On information and belief, the PII accessible to cybercriminals was not encrypted.

24.     On information and belief, the cyberattack was targeted at Defendants due to their status as a major loan provider that obtains and stores large amounts of PII.

25.     On information and belief, the targeted attack was expressly designed to gain access to and exfiltrate private and confidential data, including the PII of Plaintiffs and the Class members.

---

[3] https://cdn.advanceamerica.net/public/media/documents/2022-
04/Advance%20America%20Privacy%20Policy.pdf?VersionId=EJZFor.2fa4pWqL.VQo3y5rP_
Q1oqQte&_ga=2.117377798.1684359604.1692898536-294395171.1692750439.

26.     Moreover, while Defendants admits that they learned of the Data Breach in February 2023, Defendants inexplicably waited until August 2023 before they began the process of notifying impacted individuals, such as Plaintiffs and Class members.

27.     Due to Defendants' inadequate security measures and their delayed notice to victims, Plaintiffs and the Class members now face a present, immediate, and ongoing risk of fraud and identity theft and must deal with that threat forever.

28.     Defendants had obligations created by industry standards, common law, and their own promises and representations made to Plaintiffs and Class members to keep their PII confidential and to protect it from unauthorized access and disclosure.

29.     Plaintiffs and Class Members had the reasonable expectation that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

30.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiffs' and Class members' PII from unauthorized disclosure.

31.     As a result of Defendants' negligent and wrongful conduct, Plaintiffs' and Class members' sensitive PII was left exposed to cybercriminals.

**B.  Plaintiffs' Experiences**

***Plaintiff Knuutila***

32.     Plaintiffs Knuutila received a letter from Advance America Centers of Tennessee, Inc. d/b/a Advance America in August 2023, advising her that her PII, including her Social Security number, was accessed or acquired by cybercriminals in the Data Breach.

33.     Because of Defendants' negligence and failure to properly secure the PII in their possession, which negligence and failure led to the Data Breach, Plaintiff's PII has been obtained by cybercriminals.

34.     Plaintiff is now under an imminent risk of subsequent identity theft and fraud and will remain under such risk for the rest of Plaintiff's life. The imminent risk of identity theft and fraud Plaintiff now faces is substantial, certainly impending, continuous, and ongoing because of the negligence of Defendants in their failure to implement adequate data security protocols, which negligence led to the Data Breach.

35.     As a result of the Data Breach, Plaintiff has already expended time and suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach for Plaintiff, including (but not limited to) investigating the Data Breach, investigating how best to ensure that she is protected from identity theft, reviewing accounts statements, and monitoring other personal information.

36.     As a direct and proximate result of the Data Breach, Plaintiff will need to have identity theft protection for the foreseeable future.

37.     Plaintiff Knuutila has suffered additional injury directly and proximately caused by the Data Breach, including damages and diminution in the value of Plaintiff's PII. Additionally, Plaintiff's PII is at continued risk of compromise and unauthorized disclosure as it remains in the possession of Defendants and is subject to future wrongful disclosures and/or security breaches so

long as Defendants fails to undertake appropriate and adequate measures, including the implementation of enhanced employee training and data security protocols, to protect it.

### ***Plaintiff Garcia***

38.    Plaintiff Garcia received a letter from Advance America Centers of California, LLC d/b/a Advance America in August 2023, advising him that his PII, including his Social Security number, was accessed or acquired by cybercriminals in the Data Breach.

39.    Because of Defendants' negligence and failure to properly secure the PII in their possession, which negligence and failure led to the Data Breach, Plaintiff's PII has been obtained by cybercriminals.

40.    Plaintiff is now under an imminent risk of subsequent identity theft and fraud and will remain under such risk for the rest of Plaintiff's life. The imminent risk of identity theft and fraud Plaintiff now faces is substantial, certainly impending, continuous, and ongoing because of the negligence of Defendants in their failure to implement adequate data security protocols, which negligence led to the Data Breach.

41.    As a result of the Data Breach, Plaintiff has already expended time and suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach for Plaintiff, including (but not limited to) investigating the Data Breach, investigating how best to ensure that he is protected from identity theft, researching possible identity theft protection options, reviewing accounts statements, and monitoring other personal information.

42.    As a direct and proximate result of the Data Breach, Plaintiff will need to have identity theft protection for the foreseeable future.

43.     Plaintiff Garcia has suffered additional injury directly and proximately caused by the Data Breach, including damages and diminution in the value of Plaintiff's PII. Additionally, Plaintiff's PII is at continued risk of compromise and unauthorized disclosure as it remains in the possession of Defendants and is subject to future wrongful disclosures and/or security breaches so long as Defendants fails to undertake appropriate and adequate measures, including the implementation of enhanced employee training and data security protocols, to protect it.

### C. Defendants was on Notice of Data Threats in the Industry and of the Inadequacy of their Data Security

44.     Defendants was on notice that companies maintaining large amounts of PII are prime targets for criminals looking to gain unauthorized access to sensitive and valuable information.

45.     At all relevant times, Advance America knew, or should have known, that the PII that they collected was a target for malicious actors. Despite such knowledge, Advance America failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiffs' and Class members' PII from cyber-attacks that Advance America should have anticipated and guarded against.

46.     It is well known among companies that store sensitive personally identifying information that sensitive information—such as the Social Security numbers stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider*

noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . Many of them were caused by flaws in . . . systems either online or in stores."[4]

47.    In light of recent high profile data breaches, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Advance America knew or should have known that their electronic records would be targeted by cybercriminals.

48.    Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, take appropriate measures to prepare for, and are able to thwart such an attack.

49.    Moreover, PII is a valuable property right.[5] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[6] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[7] It is so valuable to identity

---

[4] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019, 8:05 A.M.), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[5] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[6] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD ILIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[7] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, IAB.COM (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

50.     As a result of their real and significant value, identity thieves and other cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information directly on various Internet websites making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be readily aggregated and become more valuable to thieves and more damaging to victims.

51.     Consumers place a high value on the privacy of that data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[8]

52.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

**D.  Cyber Criminals Will Use Plaintiffs' and Class Members' PII to Defraud Them**

53.     Plaintiffs' and Class members' PII is of great value to cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiffs and the Class members and to profit off their misfortune.

---

[8] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

54.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[9] For example, with the PII stolen in the Data Breach, which includes Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[10] These criminal activities have and will result in devastating financial and personal losses to Plaintiffs and Class members.

55.     PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[11]

56.     For example, it is believed that certain highly sensitive personal information compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related unemployment benefits.[12]

57.     The PII exposed in this Data Breach is valuable to identity thieves for use in the kinds of criminal activity described herein. These risks are both certainly impending and

---

[9] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

[10] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[11] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu.

[12] *See* https://www.engadget.com/stolen-data-used-for-unemployment-fraud-ring-174618050.html; *see also* https://www.wired.com/story/nigerian-scammers-unemployment-system-scattered-canary/.

substantial. As the FTC has reported, if cyber thieves get access to a person's highly sensitive information, they will use it.[13]

58.    Cyber criminals may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[14]

59.    For instance, with a stolen Social Security number, which is only one category of the PII compromised in the Data Breach, someone can open financial accounts, file fraudulent tax returns, commit crimes, and steal benefits.[15]

60.    Victims of the Data Breach, like Plaintiffs and other Class members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their privacy and credit because of the Data Breach.[16]

61.    In fact, as a direct and proximate result of the Data Breach, Plaintiffs and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.  Plaintiffs and the Class must now take the time and effort (and spend the money) to mitigate the actual and potential impact of the Data Breach on their everyday lives, including

---

[13] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[14] *Data Breaches Are Frequent*, *supra* note 11.

[15] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[16] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

purchasing identity theft and credit monitoring services every year for the rest of their lives, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and other information for unauthorized activity for years to come.

62.    Plaintiffs and the Class have suffered or will suffer actual harms for which they are entitled to compensation, including but not limited to the following:

a.    Trespass, damage to, and theft of their personal property, including PII;

b.    Improper disclosure of their PII;

c.    The imminent and certainly impending injury flowing from actual and potential future fraud and identity theft posed by their PII being in the hands of criminals and having already been misused;

d.    The imminent and certainly impending risk of having their confidential information used against them by spam callers to defraud them;

e.    Damages flowing from Defendants' untimely and inadequate notification of the Data Breach;

f.    Loss of privacy suffered as a result of the Data Breach;

g.    Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h.    Ascertainable losses in the form of deprivation of the value of individuals' personal information for which there is a well-established and quantifiable national and international market;

i.    The loss of use of and access to their credit, accounts, and/or funds;

15

j.   Damage to their credit due to fraudulent use of their PII; and

k.   Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

63.    Moreover, Plaintiffs and Class members have an interest in ensuring that their PII, which remains in the possession of Defendants, is protected from further public disclosure by the implementation of better employee training and industry standard and statutorily compliant security measures and safeguards. Defendants has shown themselves to be wholly incapable of protecting Plaintiffs' and Class members' PII.

64.    Plaintiffs and Class members are desperately trying to mitigate the damage that Defendants has caused them but, given the kind of PII Defendants made so easily accessible to cyber criminals, they are certain to incur additional damages. Because identity thieves already have their PII, Plaintiffs and Class members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with this change.[17]

65.    None of this should have happened. The Data Breach was entirely preventable.

**E.  Defendants Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiffs' and Class Members' PII**

---

[17] *Will a New Social Security Number Affect Your Credit?*, LEXINGTON LAW (Nov. 16, 2015), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.

66.    Data disclosures and data breaches are preventable.[18] As Lucy Thompson wrote in the Data Breach and Encryption Handbook, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[19] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[20]

67.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[21]

68.    Defendants obtained and stored Plaintiffs' and Class members' PII—including but not limited to, their names Social Security numbers—and was entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of such PII.

69.    Defendants breached fiduciary duties owed to Plaintiffs and the Class as guardian of their PII.

70.    Many failures laid the groundwork for the occurrence of the Data Breach, starting with Defendants' failure to incur the costs necessary to implement adequate and reasonable cyber security training, procedures and protocols that were necessary to protect Plaintiffs' and Class members' PII.

---

[18] Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).
[19] *Id.* at 17.
[20] *Id.* at 28.
[21] *Id.*

71.     Defendants maintained the PII in an objectively reckless manner, making the PII vulnerable to unauthorized disclosure.

72.     Defendants knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if Plaintiffs' and Class members' PII was stolen, including the significant costs that would be placed on Plaintiffs and Class members as a result of a breach.

73.     The risk of improper disclosure of Plaintiffs' and Class members' PII was a known risk to Defendants, and thus Defendants was on notice that failing to take necessary steps to secure Plaintiffs' and Class members' PII from that risk left the PII in a dangerous condition.

74.     Defendants disregarded the rights of Plaintiffs and Class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that the PII was protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiffs' and Class members' PII; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiffs and Class members prompt and accurate notice of the Data Breach.

## <u>CLASS ACTION ALLEGATIONS</u>

75.     Plaintiffs brings this action under Federal Rule of Civil Procedure 23 against Defendants individually and on behalf of all others similarly situated. Plaintiffs asserts all claims on behalf of the Class, defined as follows:

All persons residing in the United States whose personally identifiable information was accessed or acquired as a result of the Advance America data breach that is the subject of the notice of Data Breach that Defendants sent to Plaintiffs and other Class Members (the "Nationwide Class" or "Class").

All residents of California whose personal information was compromised as a result of the Entertainment Partners Data Breach, including those individuals who received breach notification letters (the "California Subclass").

The "Class" and the "California Subclass" are sometimes collectively referred to herein as the "Classes" or the "Class").

76.    Excluded from the Nationwide Class are Defendants, any entity in which Defendants has a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

77.    Plaintiffs reserves the right to amend the above definition or to propose subclasses in subsequent pleadings and motions for class certification.

78.    The proposed Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

79.    <u>Numerosity</u>: The proposed Class is believed to be so numerous that joinder of all members is impracticable.

80.    <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class were injured through Defendants' uniform misconduct. The same event and conduct that gave rise to Plaintiffs' claims are identical to those that give rise to the claims of every other Class member because Plaintiffs and each member of the Class had their sensitive PII compromised in the same way by the same conduct of Defendants.

81.     <u>Adequacy</u>: Plaintiffs are adequate representatives of the Class because Plaintiffs' interests do not conflict with the interests of the Class she seeks to represent; Plaintiffs have retained counsel competent and highly experienced in data breach class action litigation; and Plaintiffs and Plaintiffs' counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and Plaintiffs' counsel.

82.     <u>Superiority</u>: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

83.     <u>Commonality and Predominance</u>: There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a.   Whether Defendants engaged in the wrongful conduct alleged herein;

b.  Whether Defendants failed to adequately safeguard Plaintiffs' and the Class's PII;

c.  Whether Defendants' computer systems and data security practices used to protect Plaintiffs' and Class members' PII violated the FTC Act, and/or state laws and/or Defendants' other duties discussed herein;

d.  Whether Defendants owed a duty to Plaintiffs and the Class to adequately protect their PII, and whether they breached this duty;

e.  Whether Defendants knew or should have known that their computer and network security systems and business email accounts were vulnerable to a data breach or disclosure;

f.  Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the Data Breach;

g.  Whether Defendants breached contractual duties to Plaintiffs and the Class to use reasonable care in protecting their PII;

h.  Whether Defendants failed to adequately respond to the Data Breach, including failing to investigate they diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiffs and the Class;

i.  Whether Plaintiffs and the Class suffered injury as a proximate result of Defendants' negligent actions or failures to act;

j.  Whether Plaintiffs and the Class are entitled to recover damages, equitable relief, and other relief;

k.  Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiffs and members of the Class;

and

l.     Whether Plaintiffs and Class members are entitled to treble damages.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
**(On Behalf of Plaintiffs and the Nationwide Class)**

84.     Plaintiffs incorporates by reference the foregoing paragraphs as if fully set forth herein.

85.     Defendants gathered and stored the PII of Plaintiffs and the Class as part of the operation of their business.

86.     Upon accepting and storing the PII of Plaintiffs and Class members, Defendants undertook and owed a duty to Plaintiffs and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods and to implement necessary data security protocols and employee training to do so.

87.     Defendants had full knowledge of the sensitivity of the PII, the types of harm that Plaintiffs and Class members could and would suffer if the PII was wrongfully disclosed, and the importance of adequate security.

88.     Plaintiffs and Class members were the foreseeable victims of any inadequate safety and security practices. Plaintiffs and the Class members had no ability to protect their PII that was in Defendants' possession. As such, a special relationship existed between Defendants and Plaintiffs and the Class.

89.     Defendants owed Plaintiffs and Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiffs and the Class when

obtaining, storing, using, and managing their PII, including taking action to reasonably safeguard such data and providing notification to Plaintiffs and the Class members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

90.    Defendants' duty extended to protecting Plaintiffs and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

91.    Defendants had duties to protect and safeguard the PII of Plaintiffs and the Class from being vulnerable to compromise by taking common-sense precautions when dealing with sensitive PII. Additional duties that Defendants owed Plaintiffs and the Class include:

    a.  To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendants' networks, systems, protocols, policies, procedures and practices to ensure that Plaintiffs' and Class members' PII was adequately secured from impermissible release, disclosure, and publication;

    b.  To protect Plaintiffs' and Class members' PII in their possession by using reasonable and adequate security procedures and systems; and

    c.  To promptly notify Plaintiffs and Class members of any breach, security incident, unauthorized disclosure, or intrusion that affected or may have affected their PII.

92.     Only Defendants was in a position to ensure that their systems and protocols were sufficient to protect the PII that had been entrusted to it.

93.     Defendants breached their duties of care by failing to adequately protect Plaintiffs' and Class members' PII. Defendants breached their duties by, among other things:

    a.  Failing to exercise reasonable care in obtaining, retaining, securing, safeguarding, protecting, and deleting the PII in their possession;

    b.  Failing to protect the PII in their possession using reasonable and adequate security procedures and systems;

    c.  Failing to adequately and properly audit, test, and train their employees regarding how to properly and securely transmit and store PII;

    d.  Failing to adequately train their employees to not store unencrypted PII in their personal files longer than absolutely necessary for the specific purpose that it was sent or received;

    e.  Failing to consistently enforce security policies aimed at protecting Plaintiffs' and the Class's PII;

    f.  Failing to mitigate the harm caused to Plaintiffs and the Class members;

    g.  Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

    h.  Failing to promptly notify Plaintiffs and Class members of the Data Breach that affected their PII.

94.     Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

95.     As a proximate and foreseeable result of Defendants' negligent conduct, Plaintiffs and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

96.     Through Defendants' acts and omissions described herein, including but not limited to Defendants' failure to protect the PII of Plaintiffs and Class members from being stolen and misused, Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure the PII of Plaintiffs and Class members while it was within Defendants' possession and control.

97.     Further, through their failure to provide timely and clear notification of the Data Breach to Plaintiffs and Class members, Defendants prevented Plaintiffs and Class members from taking meaningful, proactive steps to secure their PII and mitigate damages.

98.     As a result of the Data Breach, Plaintiffs and Class members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, responding to the fraudulent use of the PII, and closely reviewing and monitoring bank accounts, credit reports, and financial statements.

99.     Defendants' wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

100.    The damages Plaintiffs and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendants' negligent conduct.

101.    Plaintiffs and the Class have suffered injury and are entitled to actual damages in amounts to be proven at trial.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**

(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS)

102.   Plaintiffs incorporates by reference the foregoing paragraphs as if fully set forth herein.

103.   In connection with the dealings Plaintiffs and Class Members had with Advance America, Plaintiffs and Class members entered into implied contracts with Advance America.

104.   Pursuant to these implied contracts, Plaintiffs and Class members provided Advance America with their PII in order for Advance America to provide financing services. In exchange, Advance America agreed to, among other things, and Plaintiffs and Class members understood that Advance America would: (1) provide services to Plaintiffs and Class member; (2) take reasonable measures to protect the security and confidentiality of Plaintiffs' and Class members' PII; and (3) protect Plaintiffs' and Class members PII in compliance with federal and state laws and regulations and industry standards.

105.   The protection of PII was a material term of the implied contracts between Plaintiffs and Class members, on the one hand, and Advance America, on the other hand. Indeed, Advance America was clear in its Privacy Policy, and Plaintiffs understood, that Advance America supposedly respects and is committed to protecting customer privacy.

106.   Had Plaintiffs and Class members known that Advance America would not adequately protect its clients' customers' and former customers' PII, they would not have provided Advance America or Advance America's clients with their PII.

107.   Plaintiffs and Class members performed their obligations under the implied contracts when they provided Advance America with their PII, either directly or indirectly.

108.     Advance America breached its obligations under their implied contracts with Plaintiffs and Class members in failing to implement and maintain reasonable security measures to protect and secure their PII and in failing to implement and maintain security protocols and procedures to protect Plaintiffs' and Class members' PII in a manner that complies with applicable laws, regulations, and industry standards.

109.     Advance America's breach of its obligations of its implied contracts with Plaintiffs and Class members directly resulted in the Data Breach and the injuries that Plaintiffs and all other Class members have suffered from the Data Breach.

110.     Plaintiffs and all other Class members were damaged by Advance America's breach of implied contracts because: (i) they paid—directly or indirectly—for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft—risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and international market; and (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

**Third Cause of Action**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

111.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

112.    This claim is pleaded in the alternative to the breach of implied contractual duty claim.

113.    Plaintiffs and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable PII.

114.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' PII.

115.    Moreover, Defendant retained the PII with no legitimate employment or business purpose.

116.    Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

117.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiffs and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

118.    Defendant acquired the monetary benefit and PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

119.    If Plaintiffs and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant or would have requested that the PII be deleted upon termination of the employment or business relationship.

120.    Plaintiffs and Class Members have no adequate remedy at law.

121.    As a direct result of the Data Breach, Plaintiffs and Class Members have suffered the following actual and imminent injuries: (a) monetary harms, including out-of-pocket expenses, loss-of time, and loss of productivity incurred mitigating the present risk and imminent threat of identity theft; (b) actual identity theft and fraud resulting in additional monetary damages; (c) diminution of value of their PII; (d) anxiety, stress, nuisance, and annoyance; (e) increased targeted and fraudulent robocalls and phishing email attempts; (f) the present and continuing risk of identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) the retention of the reasonable value of the PII entrusted to Defendant; and (h) the present and continued risk to PII,  which remains on Defendant's vulnerable networks, placing Plaintiffs and Class Members at an ongoing risk of harm.

122.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

123.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from them.

### FOURTH CAUSE OF ACTION
## VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT
### Cal. Civ. Code §§ 1798.80 *et seq*
### (On Behalf of Plaintiff Garcia and the California Subclass)

124.    Plaintiff Garcia ("Plaintiff" for purposes of this Claim) incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

125.    Defendant violated section 1798.150(a) of the CCPA, Cal. Civ. Code § 1798.150(a), by failing to prevent the Personal Information of Plaintiff and the California Subclass

from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII.

126.    The non-redacted and non-encrypted Personal Information of Plaintiff and the California Subclass was subjected to unauthorized access and exfiltration, theft, or disclosure as a direct and proximate result of Defendant' violations of their duty under the CCPA.

127.    Plaintiff and the California Subclass lost money or property, including but not limited to the loss of legally protected interest in the confidentiality and privacy of their Personal Information, nominal damages, and additional losses as a direct and proximate result of Defendant' acts described above.

128.    Defendant knew, or should have known, that their network computer systems and data security practices were inadequate to safeguard PII and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect PII, such as properly encrypting the Personal Information so in the event of a data breach an unauthorized third party cannot read the PII. As a result of the failure to implement reasonable security procedures and practices, the PII of Plaintiff and members of the California Subclass was exposed.

129.    Defendant is organized for the profit or financial benefit of their owners and collect PII as defined in Cal. Civ. Code § 1798.140.

130.    Plaintiff the California Subclass seek injunctive or other equitable relief to ensure that Defendant hereinafter adequately safeguard PII by implementing reasonable security procedures and practices. This relief is important because Defendant still hold PII related to

Plaintiff and the California Subclass. Plaintiff and the California Subclass have an interest in ensuring that their PII is reasonably protected.

131.    At this time, Plaintiff and California Class Members seek only actual pecuniary damages suffered as a result of Defendant's violations of the CCPA, injunctive and declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and any other relief the court deems proper.

132.    Concurrently with the filing of this Complaint, Plaintiff is providing written notice to Defendant identifying the specific provisions of this title she alleges it has violated. If within 30 days of Plaintiff's written notice to Defendant it fails to "actually cure" its violations of Cal. Civ. Code § 1798.150(a) and provide "an express written statement that the violations have been cured and that no further violations shall occur," Plaintiff will amend this complaint to also seek the greater of statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident, or actual damages, whichever is greater. *See* Cal. Civ. Code § 1798.150(b).

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT**
**Cal. Civ. Code §§ 1798.80 *et seq***
**(On Behalf of Plaintiff Garcia and the California Subclass)**

133.    Plaintiff Garcia ("Plaintiff" for purposes of this Claim) incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

134.    Cal. Civ. Code § 1798.81.5 provides that "[i]t is the intent of the Legislature to ensure that personal information about California residents is protected.  To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information."

135. Section 1798.81.5(b) further states that: "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

136. Cal. Civ. Code § 1798.84(b) provides that [a]ny customer injured by a violation of this title may institute a civil action to recover damages." Section 1798.84(e) further provides that "[a]ny business that violates, proposes to violate, or has violated this title may be enjoined."

137. Plaintiff and members of the California subclass are "customers" within the meaning of Civ. Code § 1798.80(c) and 1798.84(b) because they are individuals who provided personal information to Defendant, directly and/or indirectly, for the purpose of obtaining a service from Defendant.

138. The Personal Information of Plaintiff and the California Subclass at issue in this lawsuit constitutes "personal information" under § 1798.81.5(d)(1) in that the personal information Defendant collect and which was impacted by the cybersecurity attack includes an individual's name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) social security number; (ii) driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric data generated from measurements or technical

analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

139.     Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the California subclass's personal information and that the risk of a data breach or theft was highly likely.  Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiff and the California subclass.  Specifically, Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information of Plaintiff and the California subclass from unauthorized access, destruction, use, modification, or disclosure.  Defendant further subjected Plaintiff's and the California subclass's nonencrypted and nonredacted personal information to an unauthorized access and exfiltration, theft, or disclosure as a result of the Defendant' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

140.     As a direct and proximate result of Defendant' violation of its duty, the unauthorized access, destruction, use, modification, or disclosure of the personal information of Plaintiff and the California subclass included hackers' access to, removal, deletion, destruction, use, modification, disabling, disclosure and/or conversion of the personal information of Plaintiff and the California subclass by the cyber attackers and/or additional unauthorized third parties to whom those cybercriminals sold and/or otherwise transmitted the information.

141.     As a direct and proximate result of Defendant' acts or omissions, Plaintiff and the California subclass were injured and lost money or property including, but not limited to, the loss

of Plaintiff's and the subclass's legally protected interest in the confidentiality and privacy of their personal information, nominal damages, and additional losses described above. Plaintiff seeks compensatory damages as well as injunctive relief pursuant to Cal. Civ. Code § 1798.84(b).

142. Moreover, the California Customer Records Act further provides: "A person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of the breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82.

143. Any person or business that is required to issue a security breach notification under the CRA must meet the following requirements under §1798.82(d):

    a. The name and contact information of the reporting person or business subject to this section;

    b. A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

    c. If the information is possible to determine at the time the notice is provided, then any of the following:

        i. the date of the breach,

        ii. the estimated date of the breach, or

        iii. the date range within which the breach occurred. The notification shall also include the date of the notice;

    d. Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

e.  A general description of the breach incident, if that information is possible to determine at the time the notice is provided;

f.  The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a social security number or a driver's license or California identification card number;

g.  If the person or business providing the notification was the source of the breach, an offer to provide appropriate identity theft prevention and mitigation services, if any, shall be provided at no cost to the affected person for not less than 12 months along with all information necessary to take advantage of the offer to any person whose information was or may have been breached if the breach exposed or may have exposed personal information.

141.  On information and belief, to date, Defendant has not sent written notice of the data breach to all impacted individuals. As a result, Defendant has violated § 1798.82 by not providing legally compliant and timely notice to all California Subclass Members. Because not all members of the class have been notified of the breach, members could have taken action to protect their personal information but were unable to do so because they were not timely notified of the breach.

144.  As a direct consequence of the actions as identified above, Plaintiff and the California subclass members incurred losses and suffered further harm to their privacy, including but not limited to economic loss, the loss of control over the use of their identity, increased stress, fear, and anxiety, harm to their constitutional right to privacy, lost time dedicated to the investigation of the breach and effort to cure any resulting harm, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with

having their sensitive personal, financial, and payroll information disclosed, that they would not have otherwise incurred, and are entitled to recover compensatory damages according to proof pursuant to § 1798.84(b).

**SIXTH CAUSE OF ACTION**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(On Behalf of Plaintiffs and the Nationwide Class)**

145.    Plaintiffs incorporates by reference the foregoing paragraphs as if fully set forth herein.

146.    This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

147.    Defendants owed and owes a duty of care to Plaintiffs and Class members that require they to adequately secure Plaintiffs' and Class members' PII.

148.    Defendants still possesses the PII of Plaintiffs and the Class members.

149.    Defendants has not satisfied their contractual obligations and legal duties to Plaintiffs and the Class members.

150.    Actual harm has arisen in the wake of the Data Breach regarding Defendants' contractual obligations and duties of care to provide security measures to Plaintiffs and the members of the Class. Further, Plaintiffs and the members of the Class are at risk of additional or further harm due to the exposure of their PII and Defendants' failure to address the security failings that led to such exposure.

151.    There is no reason to believe that Defendants' employee training and security measures are any more adequate now than they were before the Data Breach to meet Defendants' contractual obligations and legal duties.

152.    Plaintiffs and the Class, therefore, seek a declaration (1) that Defendants' existing data security measures do not comply with their contractual obligations and duties of care to provide adequate data security, and (2) that to comply with their contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to, the following:

a.   Ordering that Defendants engage internal security personnel to conduct testing, including audits on Defendants' systems, on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

b.   Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

c.   Ordering that Defendants audit, test, and train their security personnel and employees regarding any new or modified data security policies and procedures;

d.   Ordering that Defendants provide employee training regarding the dangers and risks inherent in using file-sharing websites;

e.   Ordering that Defendants cease transmitting PII via file-sharing websites;

f.   Ordering that Defendants cease storing PII on file-sharing websites;

g.   Ordering that Defendants purge, delete, and destroy, in a reasonably secure manner, any PII not necessary for their provision of services;

h.   Ordering that Defendants conduct regular database scanning and security checks; and

      i.   Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel and employees how to safely share and maintain highly sensitive personal information, including but not limited to, personally identifiable information.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for judgment against Defendants as follows:

      a.   An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Class requested herein;

      b.   A judgment in favor of Plaintiffs and the Class awarding them appropriate monetary relief, including actual damages, treble damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

      c.   An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

      d.   An order requiring Defendants to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

      e.   A judgment in favor of Plaintiffs and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

      f.   An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all appropriate issues raised in this Class Action Complaint.

Dated:  August 28, 2023

By:  /s/ Harper Todd Segui
Harper Todd Segui
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
Federal ID No. 10841
825 Low Country Blvd, Suite 101
Mount Pleasant, South Carolina 29465
Telephone 919.600.5000
Email: hsegui@milberg.com

A. Brooke Murphy*
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
Telephone: (405) 389-4989
*abm@murphylegalfirm.com*

*pro hac vice request* forthcoming

*Counsel for Plaintiffs and the Putative Class*